IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM HOLLAND,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **TRANS UNION LLC,** *et al.* | : | **No. 21-152** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                          DECEMBER 6, 2021

### INTRODUCTION

This is one of many cases in this District challenging the way that credit reporting agencies and furnishers of credit information report consumer credit accounts under the Fair Credit Reporting Act ("FCRA"). The dispute here, like in other cases, challenges the way that credit reporting agencies report a credit account that at one time was past due but has since been closed. Adam Holland alleges that Trans Union's and Equifax's reports are inaccurate and will potentially mislead creditors now and in the future regarding his credit history. In addition, Mr. Holland alleges that USAA Federal Savings Bank, as the furnisher of the account information, failed to adequately investigate his claim. The Court, however, disagrees, and grants Trans Union's, Equifax's, and USAA's motions for judgment on the pleadings.

### BACKGROUND

Plaintiff Adam Holland's claims relate to a single account with USAA Federal Savings Bank. Mr. Holland took out a personal loan with USAA which was closed on September 27, 2017, the same date that he paid off the remaining balance on the loan in its entirety. Mr. Holland,

1

through counsel, sent a dispute letter to Equifax on December 9, 2018, arguing that his credit report inaccurately reported this account because the "Status" field states the account was 30 days past due even though the account was closed. Likewise, Mr. Holland, through counsel, sent a dispute letter to Trans Union on December 13, 2018, arguing the same in regards to the "Pay Status" field. Trans Union responded with its investigation results on January 13, 2019, and Equifax responded with its investigation results on March 12, 2019.

The Trans Union investigation report states the following: (1) In the "Remarks" field, the account is marked as "Closed," (2) in the "Balance" field, the account is shown to have a $0 balance, (3) in the "Last Payment Made" field, the account shows the last payment was made on "09/27/2017", (4) in the "Date Closed" field, the account shows a "Maximum Delinquency of 30 days" and that this delinquency occurred in "09/2017", and (5) in the "Date Closed" field, the account is shown as being closed on "09/27/2017", the same date as the last payment. Doc. No. 24-3, at 6. However, in the "Pay Status" field, the account is listed as "30 Days Past Due Date." *Id.*

Similarly, the Equifax investigation report states the following: (1) In the "Additional Information" field, the account is listed as "Closed or Paid Account/Zero Balance", (2) in the "Activity Designator" field, the account is listed as "Paid and Closed", (3) in the "Balance Amount" field, the account shows a $0 balance, (4) in the "Amount Past Due" field, the account is listed as $0 past due, (5) in the "Date of Last Payment" field, the account is shown as last having a payment in "09/2017", (6) in the "Scheduled Payment Amount" field, the account is shown to have $0 of scheduled payments, (7) in the "Date of 1st Delinquency" field, the account is shown to have its first delinquency in "09/2017", and (8) in the "Date Closed" field, the account is listed

2

as being closed in "09/2017." Doc. No. 53-3, at 5. However, in the "Status" field, the account is listed as "30-59 Days Past Due." *Id.*

Based on these investigation results, Mr. Holland argues that both Equifax and Trans Union did not follow reasonable procedures to ensure the accuracy of the reports about him and that they did not conduct a good faith investigation. Mr. Holland alleges that Trans Union continued to report an erroneous "Pay Status" field on this closed account because his report stated the account was "30 Days Past Due Date" after the account had been closed. Likewise, Mr. Holland alleges that Equifax continued to report an erroneous "Status" field on this closed account because his report stated the account was "30-59 Days Past Due" after the account had been closed. As a result, Mr. Holland claims that Trans Union and Equifax both violated the federal Fair Credit Reporting Act by (1) negligently and willfully failing to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information reported to third parties in violation of 15 U.S.C. § 1681e(b) and (2) failing to conduct a good faith investigation and failing to delete or modify inaccurate information after Mr. Holland disputed this information in violation of 15 U.S.C. §§ 1681i(a)(1)(A) and 1681i(a)(5). In addition, Mr. Holland alleges that Trans Union's and Equifax's action and/or inaction was willful, rendering them both liable for actual, statutory, and punitive damages on both counts under 15 U.S.C §§ 1681n and 1681o.

Mr. Holland also alleges that USAA, as a furnisher of credit information, did not conduct a good faith investigation when contacted by Equifax and Trans Union about this account. As a result, Mr. Holland claims that USAA violated the FCRA by negligently and willfully failing to investigate in violation of 15 U.S.C. § 1681s-2(b). In addition, Mr. Holland alleges that USAA's action and/or inaction was willful, rendering it liable for actual damages under 15 U.S.C. § 1681o.

3

Trans Union and Equifax both answered Mr. Holland's complaint and then Trans Union filed its motion for judgment on the pleadings. Equifax later filed a motion to join Trans Union's motion, which the Court granted. Thus, the Court's ruling here on Trans Union's motion also applies to Equifax.

As their chief argument, Trans Union and Equifax argue that Mr. Holland's complaint fails at the threshold because their reports have not reported any inaccurate or materially misleading information. Mr. Holland filed his response, which is also a partial cross-motion for judgment on the pleadings on the issue of accuracy, and a motion for leave to amend in the alternative. At the oral argument held on these preliminary issues, Mr. Holland withdrew the partial cross-motion for judgment on the pleadings. As a result, the Court considers Mr. Holland's briefing as a response and a motion for leave to amend. Trans Union has filed its reply.

USAA also answered Mr. Holland's complaint and then filed its motion for judgment on the pleadings, making the same chief argument as Trans Union and Equifax. Mr. Holland responded to that motion. USAA then filed its reply. The Court also held oral argument on this motion.

For the reasons that follow the Court grants both Trans Union's and Equifax's motion for judgment on the pleadings, as well as USAA's motion for judgment on the pleadings.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court may grant such a motion if the movant "is entitled to judgment as a matter of law" based on the pleadings. *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (internal quotation omitted). In other words, a motion for judgment on the pleadings can be granted only if the non-movant cannot

4

prevail under any set of facts. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001). The Court analyzes both a motion to dismiss and a motion for judgment on the pleadings under the same legal standard. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

In analyzing a motion for judgment on the pleadings, the Court takes the complaint's well-pleaded facts as true and construes all allegations and inferences in the light most favorable to the nonmoving party. *Id.* Beyond the complaint, the Court can consider documents attached to the complaint or those "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphases and internal quotation omitted).

Here, Mr. Holland, Trans Union, Equifax, and USAA attached the investigation reports to their various motions. Because the investigation reports and the information contained in them are "integral to" and "explicitly relied upon in the complaint," the Court will consider and refer to the investigation reports in resolving the present motions.[1]

## DISCUSSION

To state a viable claim under the FCRA, Mr. Holland must establish that the information in his credit report was inaccurate. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708, 712–13 (3d Cir. 2010); *see also Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 n.9 (3d Cir. 2011) (per curiam) (same). The Court does not need to reach or consider the reasonableness of a credit reporting agency's procedures under 15 U.S.C. § 1681e or the reasonableness of a credit

---

[1] An "investigation report" is not the same as a "credit report." However, the parties here provided copies of the investigation reports and request that the Court use the investigation reports to determine the accuracy of the information regarding Mr. Holland's accounts. The Court will "accept the parties' representation [that] we can determine the accuracy of the report using the investigation results." *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021). Therefore, the Court will refer to the investigation report as Mr. Holland's credit report throughout, except when briefly distinguishing the information in an investigation report that is not included in a credit report in Section I, *infra*.

reporting agency's reinvestigation under § 1681i unless the information contained in the report is inaccurate. *See Angino v. Trans Union, LLC*, 784 F. App'x 67, 69 (3d Cir. 2019) ("[W]e can assume that absent any indication that the information is inaccurate, [§ 1681i] does not mandate further investigation." (internal quotation omitted)). Likewise, courts have "explicitly held that a showing of inaccuracy is essential to a § 1681s-2(b) claim" in regard to furnishers of credit information. *Ostrander v. Trans Union LLC*, No. 20-cv-5227, 2021 WL 3271168, at *11 (E.D. Pa. July 30, 2021) (internal quotation omitted); *see also Patterson v. Sterling Jewelers Inc.*, No. 21-cv-2138, 2021 WL 4592158, at *3–4 (E.D. Pa. Oct. 6, 2021) (applying same analysis to furnisher of credit information). In short, the threshold question as to Trans Union, Equifax, and USAA is whether the information in Mr. Holland's reports was inaccurate.

Information is "inaccurate" within the meaning of the FCRA if it is incorrect or "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014). "[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." *Schweitzer*, 441 F. App'x at 902 (quoting *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008)).

Generally, the question of whether information that is "technically correct" is still materially misleading is a question for a jury. *Gibbs v. Trans Union LLC*, No. 21-cv-667, 2021 WL 4439546, at *2 (E.D. Pa. Sept. 28, 2021); *Smith v. Trans Union LLC*, No. 20-cv-4903, 2021 WL 1061213, at *2 (E.D. Pa. Mar. 19, 2021). However, where the court views the information in its entirety and determines that only one reasonable interpretation of the report exists, a court may determine a report's accuracy as a matter of law. *Gibbs*, 2021 WL 4439546, at *2 (citing *Samoura v. Trans Union LLC*, No. 20-cv-5178, 2021 WL 915723, at *4 (E.D. Pa. Mar. 10, 2021)).

In assessing the information in a consumer's credit report, a court must view the information "through the lens of a person in a position to make an adverse decision based on a credit report, *i.e.*, a creditor." *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021); *Gibbs*, 2021 WL 4439546, at *2; *Smith*, 2021 WL 1061213, at *2. In other words, it does not matter whether the report is inaccurate or misleading in the *consumer's* opinion. *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001). In reviewing the accuracy of a credit report, a court reviews the report in its entirety. *Gibbs*, 2021 WL 4439546, at *2; *see Bibbs*, 521 F. Supp. 3d at 571; *see also Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) ("[T]he fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading.").

At the oral argument on this motion, Mr. Holland argued that the language of the FCRA does not lend itself to the interpretation that a Court must consider the information in a credit report from the perspective of a creditor. Mr. Holland contended that this reads too much sophistication into the "reasonableness" standard. Instead, Mr. Holland argued that the FCRA only contemplates "users" of the information and not parties that would be in a position to make an adverse decision based on the information, such as creditors. *See, e.g.*, 15 U.S.C. § 1681e(a) (referring to "users"). The Court thinks that these are probably one and the same; in other words, a "user" of credit information is most likely to be a creditor. Nevertheless, even if Mr. Holland is right and the Court views the credit information from the perspective of some less sophisticated "user," this does not alter the outcome of the present motions.

For sake of clarity, the Court will briefly address each of Mr. Holland's arguments.

7

I.   **The "Pay Status" and "Status" Fields of Mr. Holland's Credit Reports Are Not Inaccurate Nor Misleading When Mr. Holland's Reports Are Considered as a Whole**

As an initial matter, Mr. Holland makes a mountain out of the "Pay Status" field and "Status" field of his Trans Union and Equifax credit reports, respectively. He argues that because the accounts are closed, it is inaccurate or misleading to report the "current status" of the accounts as past due. Mr. Holland bases this argument on the definition of the field provided in the glossary of terms that Trans Union attached to its investigation report. There "Pay Status" is defined as: "The current status of the account; how you are currently paying." Doc. No. 24-3, at 2. Similarly, Equifax's report notes that the "current status is being reported." Doc. No. 53-3, at 5. But it turns out this mountain is actually a mole hill; it is an argument that other courts have handily dismissed.

As the court explained in *Bibbs*, the *investigation report* that the parties attached to their briefs is not the same as a *credit report* seen by a potential user or creditor. *Bibbs*, 521 F. Supp. 3d at 574–75. In other words, the investigation reports are not what a reasonable user or creditor would see when reviewing Mr. Holland's credit report or account information. *Id.* at 574. Therefore, even considering the investigation reports as evidence of the accounts, as the parties ask the Court to do, the definition of "Pay Status" provided in the investigation report is entirely irrelevant. *Id.* at 575; *see also Smith v. Trans Union LLC*, No 20-cv-4233, 2021 WL 4818267, at *5 n.40 (E.D. Pa. Oct. 14, 2021) (same). Because the Court analyzes the account information from the perspective of a reasonable user or creditor who does not have access to the investigation report's glossary, the definition of the "Pay Status" field in Trans Union's report is beside the

point.[2] Likewise, the note on Equifax's report regarding the account's "current status" would not be seen by any user or creditor and is also superfluous to Mr. Holland's argument.

Viewing Mr. Holland's credit report as a whole, as the Court must, *see, e.g.*, *Gibbs*, 2021 WL 4439546, at *2, Mr. Holland's credit report is not "inaccurate" or "misleading" such that it would have an adverse effect on Mr. Holland. *Seamans*, 744 F.3d at 865 (internal quotation omitted); *Schweitzer*, 441 F. App'x at 902. From the perspective of a reasonable person, user or creditor, viewing Mr. Holland's reports in their entirety and considering all of the various fields, there is one reasonable reading: Mr. Holland was delinquent on the USAA personal loan in September 2017,[3] he made his last payment also in September 2017, bringing the balance of the account to $0, thus also closing the account in September 2017. The accounts were closed in September 2017, are marked as being "Closed," and remain closed. In short, there is nothing inaccurate or misleading about the information on Mr. Holland's account as he claims. Other courts have reached the same conclusion on similar facts. *Gibbs*, 2021 WL 4439546, at *3; *Ostrander*, 2021 WL 3271168, at *9.

There is certainly room for debate that the information on Mr. Holland's accounts could be *more* accurate.[4] Indeed, Mr. Holland may be right that it would be *more accurate* for his accounts

---

[2] The Court also notes that even if it were to consider the glossary in Trans Union's report as relevant, which it does not, that same glossary states: "For inactive accounts or accounts that have been closed and paid, **Pay Status** represents the last known status of the account." Doc. No. 24-3, at 3 (emphasis in original). In other words, even if the Court were to countenance Mr. Holland's legally flawed argument, it would actually work against him where, as here, his account has been paid and closed.

[3] At oral argument, Mr. Holland confirmed that he does not dispute his delinquency on the account in September 2017.

[4] It is true that the FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). However, the Court only reaches the question of whether a credit reporting agency followed such procedures if it first determines that the report contained inaccurate information. *See Cortez*, 617 F.3d at 708. Because the Court determined that Mr. Holland's report contained no inaccurate information, it does not reach this issue.

9

to state that they were "Paid In Full" rather than (or in addition to) simply that they were "Closed."[5] Mr. Holland relies on the Third Circuit's opinion in *Schweitzer* to argue that the notations on his reports should be more accurate, as he argues they were in that case. *Id.* But his argument fails for four separate reasons: law, logic, policy, and *Schweitzer* itself.

Starting with the last first, Mr. Holland's reliance on *Schweitzer* actually undermines his own argument. In *Schweitzer*, the Third Circuit Court of Appeals determined that Equifax had accurately reported Mr. Schweitzer's EMC Mortgage account when Mr. Schweitzer's report included the notation "Account Paid/Zero Balance" in the "Additional Information" field. *Schweitzer*, 441 F. App'x at 901–02. Mr. Holland argues that his account should contain the same notation as the account in *Schweitzer*. In other words, Mr. Holland concedes that if his report contained that same notation, it would be accurate, as the Third Circuit found in *Schweitzer*. But that is *precisely* what Mr. Holland's Equifax report does say; it has the *identical language* in the *identical field*. In sum, Mr. Holland's argument, at least as against Equifax, fails on its own terms. Thus, Mr. Holland's argument actually only pertains to his Trans Union report, since it contains the remark "Closed" without the elucidation Mr. Holland desires. Based on the identical language between the report at issue in *Schweitzer* and Mr. Holland's report, it seems plain that Equifax uses one type of generic notation while Trans Union uses another. Mr. Holland may wish to urge Trans Union to be more like Equifax, but that is not the Court's role. The Court has already fulfilled its role by determining that Trans Union's report is accurate as a matter of law. That Trans Union does not use the same notation as Equifax does not a FCRA claim make.

---

[5] Trans Union and Equifax both gave Mr. Holland the opportunity to make his report *more accurate* by allowing him to add a note or statement of up to 100 words to the reports. Doc. No. 24-3, at 7; Doc. No. 53-3, at 3. In other words, Mr. Holland had the opportunity to make his reports *more accurate* but declined to do so.

Second, as a matter of law, the Court's task is to consider whether the information is *inaccurate* or *misleading*, not to look for ways that the information might be *more accurate*. *Bibbs*, 521 F. Supp. 3d at 579. In other words, the Court's focus is to discern differences of kind, not degree. Therefore, as tempting as it can be, the Court will not engage in speculative semantic schooling of credit agencies or furnishers of credit information. *See id.* ("Congress does not direct us to teach credit reporting agencies on the use of 'better' language. . . We are not venturing into speculative word games. . . .").

Third, on a very elemental level, there is a vast difference between information that could be *more accurate* and information that is *inaccurate*. A great example of this concept can be found in our nation's founding document: that this nation strives to be "more perfect" does not automatically render it "imperfect." U.S. Const. pmbl. Mr. Holland's attempt to collapse the concepts so as to be coterminous is controverted.

Fourth, as a matter of policy, if the Court were to grant Mr. Holland's request, there would be no limiting principle. If information in a credit report that could be *more accurate* is *inaccurate* for purposes of the FCRA, then every single consumer in the United States would be able to state a claim under the FCRA. For example, Mr. Holland believes his accounts would be accurate if they had a notation that they were "Paid in Full." But would it not also be more accurate to state that they were "Only Late in the Last Pay Period"? Or "Only Late for X Days Until Final Payment"? If a plaintiff could make a claim under the FCRA that credit information was inaccurate simply by alleging, entirely subjectively, that there is a "better" (perhaps only longer, more cumbersome) way to report it, federal courts would take up the unwelcome task of engaging in pedantic pedagogy of phraseology. The outcome of such effort could well be forms and reports

11

that merely have more words to dispute. Neither the courts nor counsel are in need of such an annuity.

## II.   Mr. Holland's Additional Claims in his Responsive Briefing Is Inapposite at This Stage

Mr. Holland raises, for the first time in his responses, a claim that his credit report is misleading computer algorithms because these algorithms allegedly read the "Pay Status" field in isolation. Similarly, Mr. Holland also raises, for the first time in his responses, a claim that Trans Union and Equifax failed to include his September 2017 final payment in the payment history grid or historical payment information. Likewise, in his response to USAA's motion for judgment on the pleadings, Mr. Holland raises for the first time a claim that because he made a payment in September 2017, he could not also have been late in September 2017.

In a motion for judgment on the pleadings, the Court only considers the allegations raised in the complaint. *Wolfington*, 935 F.3d at 195. Because this allegation is not in his complaint, Mr. Holland cannot rely on this argument in his opposition brief. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition. . . .") (internal quotation omitted)). Mr. Holland is free to raise these allegations in an amended pleading, if he so desires. But because none of these allegations are in his complaint, the Court will not address any of them.

## III.   Mr. Holland's Claims Against USAA Fail for the Same Reasons Already Stated

As a furnisher of credit information, USAA is also liable under the FCRA for reporting inaccurate consumer credit information. *See generally* 15 U.S.C. § 1681s-2. Indeed, as most applicable here, under § 1681s-2, furnishers of credit information have a duty to notify credit reporting agencies when accounts are voluntarily closed by a consumer and when accounts are

delinquent. *See* 15 U.S.C. §§ 1681s-2(a)(4), 1681s-2(a)(5). But, for the same reason that Mr. Holland's claims against Trans Union and Equifax falter, his claim against USAA also fails.

To state a claim under § 1681s-2, a plaintiff must establish three elements: "(1) that he notified a CRA of the dispute under § 1681i, (2) that the CRA notified the party who furnished the information, and (3) that the party who furnished the information failed to investigate or rectify the disputed charge." *Hoffman v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017). As another court in this district explained, a violation of § 1681s-2 appears to only occur when a furnisher conducts an unreasonable investigation, not simply when it provides inaccurate information. *Ostrander*, 2021 WL 3271168, at *11. But, as the *Ostrander* Court went on to explain, it is more persuasive that § 1681s-2, like §§ 1681e and 1681i, would require a threshold showing of inaccuracy. *Id.* This is because § 1681s-2 "works in two phases": first, "furnishers have a duty to provide the [credit reporting agencies] with accurate information about their customers" and second, if a consumer later disputes that information, "a furnisher may be asked by a [credit reporting agency] to respond to disputes about the consumer information provided." *Id.* at *11 (alteration in original) (quoting *Pittman v. Experian Info. Sols. Inc.*, 901 F.3d 619, 629 (6th Cir. 2018)); *accord Patterson*, 2021 WL 4592158, at *2. In other words, if a furnisher has already provided accurate information to a credit reporting agency, it would have nothing further to investigate; § 1681s-2 would be nonsensical if a plaintiff could make a claim against a furnisher that it failed to investigate accurate information.

Considering this construction of § 1681s-2, the Court agrees that there must be some threshold showing of inaccuracy to make a claim against a furnisher. Because the Court has already determined that Mr. Holland's reports contained no inaccurate information, Mr. Holland's claim against USAA also collapses.

13

**IV.    The Court's Decision Is in Accord With the Majority of Other Courts in This District to Have Considered This Issue**

Mr. Holland argues that his case is distinguishable from those before the numerous other courts within this district that have come to the same conclusion. Mr. Holland contends that this case is not like the cases *Bibbs*, 521 F. Supp. 3d 569, *Samoura*, 2021 WL 915723, or *Parke v. Trans Union, LLC*, No. 20-cv-4487, Doc. No. 32 (E.D. Pa. Mar. 5, 2021), because those addressed accounts that had been closed when they were transferred and/or consolidated. Because Mr. Holland's account here was closed when it was paid in full, Mr. Holland argues that the Court should consider the decisions in *Settles v. Trans Union, LLC*, No. 20-cv-84, 2020 WL 6900302 (M.D. Tenn. Nov. 24, 2020), *Gatanas v. Am. Honda Fin. Corp.*, 2020 WL 7137854 (D.N.J. Dec. 7, 2020), and *Torres v. Wells Fargo Bank, N.A., et al.*, No 20-cv-3637, Doc. No. 70 (N.D. Ill. Aug. 2, 2021). In addition, Mr. Holland relies on the opinion from yet another court in this district, *Smith*, 2021 WL 1061213.

It is true, as Mr. Holland points out, that some courts have distinguished between loans that were paid in full and closed versus loans on which a borrower defaulted or that were transferred and closed. *See, e.g.*, *Smith*, 2021 WL 1061213, at *3; *Settles*, 2020 WL 6900302, at *5. And this argument may be more robust than some of the other factual distinctions plaintiffs have advanced in similar cases in this district and around the country. But, like the difference between *more accurate* and *inaccurate* discussed above, that Mr. Holland's argument here may be *more robust* does not mean it is actually *robust*.

First, Mr. Holland has failed to appreciate that the Court's duty is to consider his credit report *as a whole*. *Gibbs*, 2021 WL 4439546, at *2; *see Bibbs*, 521 F. Supp. 3d at 571. It is true that one court in this district considered an account that was "paid to the penny at the time it was

14

closed" but that still stated it was "60 days past due" and concluded that it could not determine that the report was "accurate and not misleading as a matter of law." *Smith*, 2021 WL 1061213, at *3. But another court in this district came to precisely the opposite conclusion. *Ostrander*, 2021 WL 3271168, at *8. In fact, the court in *Ostrander* confronted the identical facts as the case here where the account was late at the time of the last payment, paid in full on the final payment, and simultaneously closed on the final payment. *Id.* Collecting cases, the court in *Ostrander* noted, like the Court did here, that "when read in conjunction with the other trade lines, no reasonable creditor would understand the monthly payment notation to indicate a current payment obligation." *Id.* And, the *Ostrander* court explicitly analyzed and declined to embrace the reasoning of the *Smith* court. *Id.* at *9. Likewise, the *Gibbs* court came to the same conclusion. *Gibbs*, 2021 WL 4439546, at *3. Here, the Court finds the reasoning and conclusion of the *Ostrander* and *Gibbs* courts to be more persuasive. No reasonable person, creditor or user, viewing Mr. Holland's reports in their entirety, would think that the USAA loan was still actively "past due." While it is important to weigh the opinions of colleagues, they are, of course, not binding. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). Therefore, the Court declines to follow *Smith* and instead opts to follow *Ostrander* and *Gibbs*.

Moreover, it is true that certain courts have attempted to distinguish facts in the way that Mr. Holland suggests or to reconcile seemingly irreconcilable cases by closely comparing the facts. *See e.g. Bibbs*, 521 F. Supp. 3d at 576–80 (discussing numerous cases); *Samoura*, 2021 WL 915723, at *5–8 (same); *Smith*, 2021 WL 1061213, at *3 (discussing factual distinctions). However, rather than attempting to reconcile these cases, this Court will state the plain truth: The Third Circuit Court of Appeals has yet to rule on this issue and courts in this district have, at times,

come to irreconcilable conclusions on seemingly identical sets of facts. But, in the past few months, certainly, there has been a growing consensus that a credit report listing a presently-closed account as past due at some point in the past is not "inaccurate" for purposes of the FCRA when the report, considered as a whole, demonstrates to a reasonable person that the account is, in fact, closed.[6] And, even more specific to this case, there is a growing consensus that a credit report listing a presently-closed account that was paid in full with the final payment as past due is not "inaccurate" for purposes of the FCRA when the report, considered as a whole, demonstrates to a reasonable person that the account is, in fact, closed.[7]

In order to avoid further confusion and to avoid signaling to other plaintiffs and other courts that getting bogged down in such factual minutiae will necessarily affect the outcome, the Court will not rehash each and every case that has addressed this issue. The distinctions are unavailing. *See, e.g.*, *Patterson*, 2021 WL 4592158, at *3 ("[E]fforts to focus the Court on these cases and ignore the many others that reach a different conclusion . . . are unavailing."); *Ostrander*, 2021 WL 3271168, at *8 ("[T]he plaintiff makes no attempt to explain why the distinction between transferred and non-transferred accounts matters. He does not explain, for example, why those courts' approach of reading the credit report as a whole and the logical conclusions to be drawn therefrom do not apply equally to accounts that are not transferred.").

Therefore, the Court grants Trans Union's and Equifax's motion for judgment on the pleadings and also grants USAA's motion for judgment on the pleadings.

---

[6] *See, e.g.*, *Bibbs v. Trans Union LLC*, No. 20-cv-4514, 521 F. Supp. 3d 569 (E.D. Pa. Feb. 23, 2021); *Smith v. Trans Union LLC*, No. 20-cv-4233, 2021 WL 4818267 (E.D. Pa. Oct. 14, 2021); *Patterson v. Sterling Jewelers Inc.*, No. 21-cv-2138, 2021 WL 4592158, (E.D. Pa. Oct. 6, 2021); *Gibbs v. Trans Union LLC, et al.*, No. 21-cv-667, 2021 WL 4439546 (E.D. Pa. Sep. 28, 2021); *Ostrander v. Trans Union LLC, et al.*, No. 20-cv-5227, 2021 WL 3271168 (E.D. Pa. July 30, 2021); *Samoura v. Trans Union LLC*, No. 20-cv-5178, 2021 WL 915723 (E.D. Pa. Mar. 10, 2021); *Parke v. Trans Union, LLC*, No. 20-4487, Doc. No. 32 (E.D. Pa. Mar. 5, 2021).

[7] *See, e.g.*, *Gibbs*, 2021 WL 4439546, at *3; *Ostrander*, 2021 WL 3271168, at *9.

### V.   Mr. Holland May Seek Leave to Amend

In the alternative to his response to Trans Union's, Equifax's, and USAA's motions for judgment on the pleadings, Mr. Holland now seeks leave to amend his complaint to correct its deficiencies. Mr. Holland is right that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And Mr. Holland is also right that courts are directed to "generally" grant such requests. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). On the other hand, "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Mr. Holland did not do so here.

Splitting the difference, the Court grants Mr. Holland leave to *seek leave* to amend his complaint. Therefore, in a technical sense the Court denies Mr. Holland's present motion to amend his complaint but will grant him the opportunity to file a new motion for leave to amend with the amended pleading appropriately attached.

### CONCLUSION

For the foregoing reasons, the Court grants Trans Union's and Equifax's Motion for Judgment on the Pleadings, grants USAA's Motion for Judgment on the Pleadings, and denies the Motions for Leave to Amend. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

17